IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

BRITTANY S. COOPER,                )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )      CASE NO.  2:11-cv-964-MEF
                                   )          [WO – Do Not Publish]
RAYMOND ROGERS, *et al.*,          )
                                   )
        Defendants.                )

## MEMORANDUM OPINION AND ORDER

Plaintiff Brittany S. Cooper brings several federal constitutional and state law claims against Defendants Raymond Rogers and Curtis Pritchett, the Sheriff of Bullock County and the Chief Administrator of the Bullock County Jail, respectively.  (Am. Compl. (Doc. # 15).) The case is now before the Court on Defendants' second Motion to Dismiss (Doc. # 16), which is fully briefed (Docs. # 17, 19, 20).  Having considered the arguments of the parties and the relevant law, the Court finds that Defendants' motion is due to be **GRANTED in part and DENIED in part**.

## I.  JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. §§ 1331 (federal question), 1343(a)(3) (civil rights), and 1367 (supplemental).  The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of both.

## II.  STANDARD OF REVIEW

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction asserts either a facial or factual challenge to the complaint.  *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. May 20, 1981)[1]); *accord Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990).  A factual attack challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered."  *Lawrence*, 919 F.2d at 1529 (citation and internal quotation marks omitted).  A facial attack, on the other hand, challenges the complaint on its face and "require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction."  *McElmurray*, 501 F.3d at 1251 (quoting *Lawrence*, 919 F.2d at 1529).  In considering a facial attack, as with a Rule 12(b)(6) motion, the court must take as true the allegations in the complaint.  *See Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009).

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint; thus, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

---

[1] In *Bonner v. City of Prichard*, the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.  *See* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).  In other words, a complaint need not contain "detailed factual allegations," but must include enough facts "to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 545.

### III.  BACKGROUND

Accepting as true the factual allegations in the Complaint, the Court finds the following facts:

On July 22, 2009, Plaintiff was arrested for an alleged probation violation and was taken to the Bullock County Jail.  (Am. Compl. ¶¶ 7-8.)  On August 6, 2009, while still in the custody of the Bullock County Sheriff, Plaintiff learned from a doctor that she was pregnant.  (Am. Compl. ¶¶ 12.)  The doctor wrote a diagnosis of pregnancy, which Plaintiff provided to the Bullock County Jail staff.  (Am. Compl. ¶¶ 13-15.)  Plaintiff's probation was revoked by the Bullock County Circuit Court on September 9, 2009.  (Am. Compl. ¶ 16.)  Although initially held in the Bullock County Jail, Plaintiff was placed on house arrest pending transfer to the Alabama Department of Corrections.  (Am. Compl. ¶¶ 16-17.)  However, on September 24, 2009, Plaintiff was returned to the Bullock County Jail.  (Am. Compl. ¶ 18.)

On that same day, September 24, 2009, Plaintiff "began bleeding irregularly from her vaginal area and immediately reported it to . . . Officer Pritchett."  (Am. Compl. ¶ 20.)

Officer Pritchett responded that "Sheriff [Rogers] would send her to Tutwiler Prison if she continued to talk about the bleeding and [need for] medical attention."[2]  (Am. Compl. ¶ 21.)

On September 25, 2009, Plaintiff "notified a second jailor[,] Ruby Thomas[,] about her bleeding." (Am. Compl. ¶ 22.)  Instead of seeking medical attention for Plaintiff, Officer Thomas provided Plaintiff feminine hygiene products and over-the-counter pain relievers. (*Id.*)

On September 26 and 27, 2009, Plaintiff complained to jailors Ruby Thomas and Dorothy Thomas.  On both days, the jailors did not seek medical attention, and instead supplied Plaintiff with additional feminine hygiene products and over-the-counter pain relievers.  (Am. Compl. ¶¶ 23-25.)  Also on September 27, 2009, Plaintiff again requested assistance from Officer Pritchett.  Officer Pritchett informed Plaintiff that he was "off duty" and instructed Plaintiff "to pretend that he was invisible . . . ."  (Am. Compl. ¶ 26.)

Plaintiff remained in the Bullock County jail an additional ten (10) days until October 7, 2009, when she finally persuaded Ruby Thomas to call Sheriff Rogers about her condition. Sheriff Rogers initially responded that Plaintiff had "better keep that baby in her."  (Am. Compl. ¶ 28.)  Plaintiff, who was growing desperate, then sought assistance from Dorothy

---

[2]  To place this comment in context, ADOC's Julia Tutwiler Prison has a longstanding history of sexual assaults and sexual violence towards inmates.  A 2007 United States Department of Justice report identified Tutwiler as having the highest incidence of sexual assaults in the country among women's prisons, and it ranked 11th overall (men's and women's facilities) in terms of sexual assaults.  The Justice Department is said to be currently investigating conditions at the prison.  *See* Andy Brownfield, *DOJ Investigating Reports of Abuse Tutwiler Prison*, printed in the Montgomery Advertiser, May 29, 2012; *see also* Campbell Robertson, *Alabama: Sexual Assaults Reported in Women's Prison*, N.Y. Times, May 22, 2012.

Thomas, who called Sheriff Rogers a second time to seek permission to get Plaintiff medical assistance.   Sheriff Rogers retreated from his original position, and called Plaintiff's probation officer, who instructed Sheriff Rogers to allow Plaintiff to seek medical attention. (Am. Compl. ¶ 30.)   When Plaintiff finally saw a doctor, she was informed that she had suffered a miscarriage.   She also was informed that had she gotten to the hospital sooner, the baby might have been saved.   (Am. Compl. ¶¶ 30.)

Plaintiff brings three constitutional causes of action.   Count I alleges an Eighth Amendment deliberate indifference to serious medical needs claim.   (Am. Compl. ¶¶ 31-40.) Count II alleges a Fourteenth Amendment equal protection violation.   (Am. Compl. ¶¶ 41-46.) Count III alleges a substantive due process violation under the Fourteenth Amendment. (Am. Compl. ¶¶ 47-56.)   Count IV is entitled "Violation of State Law," and references *Ala. Code* § 14-6-19.   (Am. Compl. ¶¶ 57-61.)   Plaintiff has sued Sheriff Rogers and Officer Pritchett in their individual capacities and seeks monetary relief.

## IV.  DISCUSSION

### A.  <u>Eighth Amendment Claim (Count I)</u>

To sufficiently state a claim for § 1983 individual liability, a plaintiff must allege that (1) she was deprived of a right secured by the United States Constitution or a federal statute, and (2) the act or omission causing the deprivation was committed by an individual acting under color of state law.   *Wideman v. Shallowford Cmty. Hosp., Inc.*, 826 F.2d 1030, 1032 (11th Cir. 1987).

In their second motion to dismiss, Defendants have raised the defense of qualified immunity. (Doc. #17, at 6.) "Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Lee*, 284 F.3d at 1193-94. The doctrine aims to focus government officials on "'their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law.'" *Hoyt v. Cooks*, 672 F.3d 972, 977 (11th Cir. 2012).

The examination of a qualified immunity defense involves a three-part analysis. First, the official must establish that he was performing discretionary acts, which is undisputed in this case. At this point, the court must grant the defendant officer qualified immunity unless the plaintiff's alleged facts, accepted as true, show (1) that there was a violation of the Constitution or federal law and (2) that the illegality of the officer's actions was clearly established at the time of the incident. *Hoyt*, 672 F.3d at 977 (citing *Lee*, 284 F.3d at 1194). In *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), the Supreme Court instructed the lower federal courts to use sound discretion to decide which of these two prongs to address first.

### 1.   *Constitutional Violation*

Deliberate indifference to a prisoner's serious medical needs is a violation of the Eighth Amendment.[3] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Although it appears to be

---

[3] In the first Opinion, the Court discussed that it was unable to decipher whether Plaintiff
(continued...)

a novel concept to Defendants, considering their arguments that they were not financially responsible for Plaintiff's medical costs (Br. in Support 12 & n.5), Sheriff Rogers, as the official designated by Alabama law to be responsible for the Bullock County Jail, *Ala. Code* § 14-6-1 ("The sheriff has the legal custody and charge of the jail in his or her county and all prisoners committed thereto . . . ."), and Officer Pritchett, as Chief Administrator of the Bullock County Jail, are bound by the Eighth Amendment.

A prisoner's deliberate indifference claim consists of three components. First, the prisoner must satisfy the objective component by showing that she had a serious medical need. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007) (citing *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005)). Second, she must satisfy the subjective component by showing that the prison official(s) acted with deliberate indifference to her serious medical need. *Id.* Third, and finally, she must show that her injury or injuries was or were caused by the official's wrongful conduct. *Id.* (citing *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995)).

"A medical need that is serious enough to satisfy the objective component 'is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Hill*

---

[3](...continued)
was a pre-trial detainee or a post-conviction prisoner. (Mem Op. 8-9.) Plaintiff's allegations in the Amended Complaint reveal that she was post-conviction prisoner, as she was already adjudicated guilty of her alleged probation violation(s). Accordingly, her deliberate indifference to medical needs claim is subject to the Eighth Amendment.

*v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)).   Defendants make a rather callous argument regarding Plaintiff's miscarriage.   Defense counsel essentially argues, and apparently does so with a straight face, that Plaintiff's vaginal bleeding during pregnancy (an indicator of miscarriage) does not qualify as a serious medical need, because miscarriages are natural occurrences and because there is little that can be done to prevent them.   Were the law not so clear that arguments of counsel are not evidence, the Court would be tempted to see such reasoning as substantive evidence of deliberate indifference.   *Estelle*, 429 U.S. at 105-06 (referring to "evolving standards of decency").   First and foremost, the Court must take Plaintiff's factual allegations as true.   Plaintiff alleges that when she finally did see a doctor, she was told that the baby could have been saved had she received medical attention sooner.   Defendants, of course, are free to enlist an expert to refute this at trial, but, as alleged, the miscarriage was preventable.   Second, even if, as Defendants contend, the miscarriage was inevitable, Plaintiff's condition was quite obviously serious if only for her own medical needs.   Third, the law is unwaveringly clear that prolonged vaginal bleeding during pregnancy does constitute a serious medical need, and indeed is "one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Goebert*, 510 F.3d at 1326-27 (stating that "[t]he fact that Goebert had been seen by [a doctor] does not mean that a layman could not tell that she had a serious medical need"); *see also id.* (citing *Archer v. Dutcher*, 733 F.2d 14, 17 (2d Cir. 1984) (reversing a grant of summary judgment against a female prisoner who miscarried allegedly as a result of a five

hour delay in responding to her vaginal bleeding)); *Boswell v. Sheburne Cnty.*, 849 F.2d 1117 (8th Cir. 1988) (affirming district court's denial of summary judgment on deliberate indifference claim where detained plaintiff, who was six months pregnant and began suffering vaginal bleeding, was denied medical care and gave birth to a stillborn child); *Pool v. Sebastian Cnty.*, 418 F.3d 934, 944-45 (8th Cir. 2005) (finding that plaintiff's condition – a few months pregnant and bleeding and passing blood clots and in severe pain – constituted a need for medical attention that would have been obvious to a layperson (quotations and citations omitted)); *Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1158 (11th Cir. 2010) (Plaintiff who was three months pregnant and suffering vaginal bleeding had a serious medical need); *see also Ferris v. Cnty. of Kennebec*, 44 F. Supp. 2d 62, 67 (D. Me. 1999) (irregular vaginal bleeding during a pregnancy is "plainly serious"). Thus, not only does Defendants' argument approach the bounds of decency, it also sits on the threshold of frivolity as not "warranted by existing law[.]" Fed. R. Civ. P. 11(b)(2). On the alleged facts, Plaintiff quite obviously was in desperate need of medical attention.

The subjective component for an Eighth Amendment deliberate indifference claim requires showing that the official acted with deliberate indifference to the prisoner's serious medical need. *Goebert*, 510 F.3d at 1326-27. "This means that the '[p]laintiff must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence.'" *Id.* (quoting *Bozeman*, 422 F.3d at 1272).

9

With respect to the first element of proof, it is a question of fact as to whether a particular defendant has subjective knowledge of the risk of serious harm. *Goebert*, 510 F.3d at 1327 (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). In assessing qualified immunity at the motion to dismiss stage, the facts alleged are to be taken as true and all reasonable inferences drawn in the plaintiff's favor. *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1023 (11th Cir. 2001) (*en banc*). The alleged facts and the reasonable inferences drawn from them show that both Defendants had a subjective knowledge of a risk of serious harm. Both were aware of Plaintiff's pregnancy and her bleeding.

Second, the facts as alleged show a conscious disregard of that risk. From September 24, 2009, to October 7, 2009, Plaintiff's pleas for medical attention were both rejected and ridiculed. When Plaintiff first reported her condition to Officer Pritchett, on September 24, he threatened to "send her to Tutwiler [Women's] Prison [an ADOC facility with a poor reputation, *supra* n.2] if she continued to talk about the bleeding . . . ." (Am. Compl. ¶ 21.) Non-defendant jail staff Ruby and Dorothy Thomas did provide Plaintiff with feminine hygiene products and pain medication. However, such plainly inadequate treatment does not change the nature of Defendants' alleged disregard. *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) (deliberate indifference shown where provided medical treatment was so cursory as to amount to no treatment at all (citing cases)). On September 27, when Plaintiff again requested help, Officer Pritchett told her "to pretend that he was invisible[.]" (Am. Compl. ¶ 26.) On October 7, 2009, after Plaintiff had convinced Ruby

10

Thomas to call Sheriff Rodgers, he retorted that Plaintiff had "better keep that baby in her." (Am. Compl. ¶ 28.)  He only relented when Plaintiff's probation officer intervened on her behalf.  In sum, the alleged facts reveal that Plaintiff languished in Bullock County Jail for thirteen days while her pleas for medical attention were cruelly disregarded.

In an attempt to justify that alleged disregard, Defendants make the following "not our problem" claims worth reproducing:

> In deciding this issue it is important for this Court to know what is *not alleged*: (1) Plaintiff did not allege that she suffered physical injury or contact while in custody to cause the miscarriage; (2) Plaintiff did not allege that there was an environmental or some other type of condition within the Bullock County Jail to cause the miscarriage; (3) on the dates in which she complained . . ., she does not allege that she asked to see a doctor but needed "*medical attention*"; (4) the Complaint is devoid of any motivation for refusal of medical care . . . .

(Br. in Support 9.)  The Court responds to these contentions with "so what?"  The fact that these arguments have been advanced reveals an unfortunate misunderstanding on the part of the Defendants regarding the legal obligations for their important posts.  The law does not care in the slightest degree that the Defendants did not cause the Plaintiff's medical condition, or what their motivation was, if any, for denying medical care.  The law simply concerns itself with ensuring that prisoners in county jails receive timely medical care for serious medical needs.  In this context, the law does not bother with the "whys" or the "hows" regarding medical conditions.  It simply mandates that the officials who have legal custody of prisoners fulfill their legal duties and provide their prisoners – wards of the

county's sheriff when they are in a county jail in Alabama – with conditions of confinement sufficient to satisfy the Constitution and laws of this country.

Third, the official conduct at issue must constitute more than gross negligence. "The meaning of 'more than gross negligence' is not self-evident but past decisions have developed the concept." *Goebert*, 510 F.3d at 1327. The first distinction to make is whether the case involves a delay in medical care or whether it involves the adequacy or type of medical care provided. For cases that turn on the delay in medical care, the Eleventh Circuit has provided some guiding factors: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." *Id.* at 1327 (citing *Hill* 40 F.3d at 1189). Accepting the factual allegations in the Amended Complaint as true and drawing all reasonable inferences in Plaintiff's favor, the Court concludes that all of these factors weigh decidedly in Plaintiff's favor. The conduct in this case is like that of the official in *Goebert*. In that case, the defendant officer simply did not believe the pregnant plaintiff's complaints and told her that if she wanted medical care, she would have to pay. The Eleventh Circuit found that the officer's conduct, not bothering to verify the condition, "smack[ed] of deliberate indifference." *Id.* at 1328. The allegations in this case are similar, but worse; the Defendants are alleged to have known of Plaintiff's condition for thirteen days, to have shown contempt for it and for her, and to have only relented when an assuredly upset probation officer confronted them. The phrase "deliberate indifference" could have been coined in the context of these allegations.

Finally, the deliberate indifference plaintiff must show a causal connection between the deliberate indifference and the constitutional harm.  On the alleged facts, Plaintiff has met her burden of showing a plausible causal connection.  Plaintiff alleges that the doctor informed her that the baby could have been saved had she received treatment sooner. Furthermore, Plaintiff may have suffered other damages in addition to losing the baby.  Thus, the alleged delay in receiving care contributed significantly to Plaintiff's harm.

Accordingly, accepting as true the facts of the Amended Complaint, the Court finds that there is a constitutional violation.

### 2.   *Clearly Established*

In order for Plaintiff's Eighth Amendment deliberate indifference claim to get past the shield of qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  In other words, "the unlawfulness [of the official's conduct] must be apparent." *Id.* (collecting cases).  Qualified immunity protects all officials except "'the plainly incompetent or those who knowingly violate the law.'" *Doe v. Braddy*, 673 F.3d 1313, 1317-18 (11th Cir. 2012) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"[T]hree sources of law [may] put a government official on notice of statutory or constitutional rights: specific statutory or constitutional provisions; principles of law

enunciated in relevant decisions; and factually similar cases already decided by state and federal courts in the relevant jurisdiction." *Goebert*, 510 F.3d at 1330 (citing cases).

The Eleventh Circuit has stated that "'[a] government official can be put on notice that his actions will violate a constitutional or statutory right by . . . a legal principle announced [in] a decision from a court with jurisdiction over the place where the violation of rights was committed.'" *Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1237 (11th Cir. 2010) (quoting *Danley v. Allen*, 540 F.3d 1298, 1313 (11th Cir. 2008)).

There is a wealth of precedent in the Eleventh Circuit that unjustifiable delays in treatment by officials armed with knowledge of a prisoner's serious medical need violates clearly established rights. In *Lancaster v. Monroe County, Alabama*, the Eleventh Circuit held that "an official acts with deliberate indifference when he intentionally delays in providing an inmate with access to medical treatment, knowing that the inmate has a life-threatening or an urgent medical condition that would be exacerbated by delay." 116 F.3d 1419, 1425 (11th Cir. 1997); *see also Goebert*, 510 F.3d at 1330 (describing *Lancaster*'s holding in clearly established context). The Defendants' alleged action or inaction fits within the category of cases where the Eleventh Circuit has found that a prisoner's constitutional right to timely treatment for serious medical needs has been violated. As discussed above, the facts of this case are similar to those in *Goebert*. *See also Harris v. Coweta Cnty.*, 21 F.3d 388, 393 (11th Cir. 1994) (stating that "it [is] clearly established that knowledge of the need for medical care and intentional refusal to provide that care constitute[s] deliberate

14

indifference." (citing *Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989))); *Carswell v. Bay Cnty.*, 854 F.2d 454 (11th Cir. 1988). Put succinctly, the Amended Complaint's allegations are that Defendants were on notice of Plaintiff's urgent medical needs, and then intentionally and unjustifiably waited thirteen days before allowing her to see a doctor. *See Youmans v. Gagnon*, 626 F.3d 557, 564 (11th Cir. 2010) ("lengthy delays are often inexcusable"). If the allegations are proven to be true, the law was clearly established to the point of putting Defendants on notice that their conduct was unlawful.

Accordingly, at this stage of the litigation, the Court determines that Defendants are not entitled to qualified immunity on Plaintiff's Eighth Amendment deliberate indifference claim. However, should the facts develop in a manner inconsistent with the allegations of the Amended Complaint, the Court would be willing to revisit the qualified immunity analysis. Thus, with respect to Plaintiff's Eighth Amendment deliberate indifference claim, Defendants' motion to dismiss is due to be denied.

**B.**     **The Fourteenth Amendment Equal Protection Claim (Count II)**

In the first Memorandum Opinion and Order (Doc. # 14), the Court dismissed Plaintiff's equal protection claim with prejudice. (Mem. Op. 10.) However, the dismissal was based upon the paucity of factual allegations in the first Complaint; there was no conclusion that Plaintiff could not plead a legally sufficient claim. (Mem. Op. 7-8.) Despite the dismissal with prejudice, Plaintiff has re-pleaded her equal protection claim.

The Court construes this as a motion to reconsider the dismissal with prejudice, and grants it.[4]  Plaintiff's new allegations state that Defendants intentionally treated Plaintiff differently from other inmates based upon her gender, and that this intent is evidenced both by the comments made to Plaintiff regarding her pleas for medical attention and by Defendants' seeking of medical attention for male prisoners.   (Am. Compl. ¶¶ 43-44.) Essentially, Plaintiff's claim is that Defendants discriminated against her based upon gender when they pointedly refused to allow her medical care for a condition that is uniquely female.

The law allows a court to extrapolate gender discrimination when the discrimination is against the pregnancy itself.  For example, in the context of Title VII claims, Congress has explicitly stated in the Pregnancy Discrimination Act, overturning contrary Supreme Court precedent,  that the phrases "because of sex" or "on the basis of sex" include discrimination on the basis of pregnancy, childbirth, or related medical conditions.  42 U.S.C. § 2000e(k); *see also Lang v. Star Herald*, 107 F.3d 1308, 1311 n.2 (8th Cir. 1997).  In *Chipman v. Grant County School District*, the Eastern District of Kentucky, discussing with approval a Central District of Illinois case, stated:  "[B]ecause only women can become pregnant, the dismissal [of the plaintiff from an honors society on account of her pregnancy] necessarily constituted unequal treatment based on gender and violated the Equal Protection Clause of the

---

[4]  Defendants are not prejudiced by this, because they did not rely on the Court's dismissal with prejudice in the first Memorandum Opinion and Order in moving to dismiss the equal protection claim as asserted in the Amended Complaint.

Fourteenth Amendment to the Constitution."  30 F. Supp. 2d 975, 978 (E.D. Ky. 1998)

(citing *Wort v. Vierling*, No. 82cv3169, slip op. (C.D. Ill. Sept. 4, 1984)).

To plead an equal protection claim, a plaintiff must allege that "through state action,

similarly situated persons have been treated disparately."  *Thigpen v. Bibb Cnty., Ga.,*

*Sheriff's Dep't*, 223 F.3d 1231, 1237 (11th Cir. 2000), *abrogated on other grounds by Nat'l*

*R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).  In order to prove substantively an

"an equal protection claim, 'a prisoner must demonstrate that (1) [s]he is similarly situated

to other prisoners who received more favorable treatment; and [that] (2) the state engaged

in invidious [and intentional] discrimination against [her] based upon race, religion, national

origin, or some other constitutionally protected basis.'"  *Muhammad v. Sapp*, 388 F. App'x

892, 899 (11th Cir. 2010) (quoting *Sweet v. Sec'y Dep't of Corr.*, 467 F.3d 1311, 1318-19

(11th Cir. 2006)); *see also Reed v. Reed*, 404 U.S. 71, 73 (1971) (gender is a constitutionally

protected classification).  At the motion to dismiss stage, an equal protection plaintiff need

only allege enough facts to state a claim that is plausible on its face.

As stated above, it is beyond dispute that pregnancy complications constitute serious

medical needs.  With respect to her equal protection claim, Plaintiff alleges that Defendants

seek medical care for male prisoners' serious medical needs, but did not seek medical care

for Plaintiff's pregnancy-related serious medical need, and that this disparate treatment was

both intentional and motivated by gender animus, as evidenced by the gender-discriminatory

comments recited above.  These allegations are sufficient to survive a motion to dismiss.

17

C.    <u>**The Substantive Due Process Claim (Count III)**</u>

Having concluded that Plaintiff was a post-conviction prisoner, her deliberate indifference claim is properly analyzed under the Eighth Amendment, and not the Fourteenth Amendment's substantive due process clause applicable to pre-trial detainees. (*See* Mem. Op. 8-9.) Accordingly, Plaintiff's Fourteenth Amendment substantive due process claim is due to be dismissed.

D.    <u>**Plaintiff's State Law Claim (Count IV)**</u>

Plaintiff does not oppose Defendants' argument that *Ala. Code* § 14-6-19 does not create a private tort-like right of action for prisoners. (Pl.'s Resp. 8 ("Plaintiff concedes that [§14-6-19] does not create a private right of action.").) Thus, the Court considers Count IV to be abandoned, and it will be dismissed.

## V.  CONCLUSION

Accordingly, it is ORDERED Defendants' Motion to Dismiss (Doc. # 16) is GRANTED as to Counts III and IV and DENIED as to Counts I and II. It is further ORDERED that Counts III and IV are DISMISSED with prejudice. The case will proceed on Counts I and II.

DONE this 6th day of June, 2012.

/s/ Mark E. Fuller
UNITED STATES DISTRICT JUDGE

18